UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ROLAND POUR, SR.,
KMONTEE POUR, and
ROLAND POUR, JR.,

Case No. 22-CV-1502 (PJS/DJF)

      Plaintiffs,

ORDER

v.

LIBERTY MUTUAL PERSONAL
INSURANCE COMPANY,

      Defendant.

---

Adam Hagedorn and Charles J. Lloyd, LIVGARD, LLOYD, & CHRISTEL
PLLP, for plaintiffs.

Daniel W. Berglund, GROTEFELD HOFFMAN LLP, for defendant.

Plaintiff Roland Pour, Sr. ("Pour") and his sons, plaintiffs Kmontee Pour

("Kmontee") and Roland Pour, Jr. ("Roland"), brought this coverage action against

defendant Liberty Mutual Personal Insurance Company ("Liberty Mutual") after the

company declined to indemnify Pour for fire damage to his house and declined to

indemnify Kmontee and Roland for fire damage to their personal property.  This matter

is before the Court on the Pours' motion for partial summary judgment and on Liberty

Mutual's motion for full summary judgment.  For the reasons that follow, the Court

denies the Pours' motion and grants Liberty Mutual's.

I.  BACKGROUND

The material facts are not in dispute.  In 2010, Pour purchased a house in

Champlin, Minnesota for use as his primary residence.  Pour Exam. 9:6–16, ECF No. 33-

1.  Four years later, Pour obtained from Liberty Mutual a homeowner's policy covering

the house ("the Policy").  Policy at 2, ECF No. 28-1; ECF No. 33-12 at 1.  The Policy

defines "named insured" as Pour and "insured" as both Pour and "relatives" of Pour

who are "residents of [Pour's] household."  Policy at 8, ECF No. 28-1.  The "insured

location" is defined in the Policy as the "residence premises."  Policy at 8, ECF No. 28-1.

"Residence premises" is, in turn, defined as follows:

> 8.  "Residence premises" means:
>
> a.  The one family dwelling, other structures, and
>     grounds; or
>
> b.  That part of any other building;
>
> *where you reside* and which is shown as the "residence
> premises" in the Declarations.  "Residence premises" also
> means a two family dwelling where you reside in at least
> one of the family units and which is shown as the "residence
> premises" in the Declarations.

Policy at 8, ECF No. 28-1 (emphasis added).

The Policy expressly provides coverage for the "dwelling on the 'residence

premises' shown in the Declarations, including structures attached to the dwelling."

Policy at 8–9, ECF No. 28-1.[1]  The Policy also expressly covers the personal property of

"insureds."  The coverage dispute in this case turns on the meaning of the phrase

"where you reside"—and, specifically, on whether Pour "reside[d]" in the Champlin

home at the time of the fire.

As noted, when Pour bought the Champlin home in 2010, it was his

primary—indeed, his only—residence.  In 2019, however, Pour moved to Georgia to

live with his second wife, and from that point forward Pour lived and worked in

Georgia.  Pour Exam. 9:3–16, 13:19–23, ECF No. 33-1.  Kmontee and Roland—both of

whom are adult sons of Pour and his first wife—continued to live in the Champlin

house, as they had before Pour moved to Georgia.  Pour Depo. 25:4–10, ECF No. 28-2.

After moving to Georgia, Pour continued to own the Champlin house and pay its

mortgage, property taxes, and insurance premiums, although the utilities were

transferred into Kmontee's name.  Pour Depo. 30:13–16, 31:19–24, ECF No. 28-2.  Pour

traveled to Minnesota on a handful of occasions and, when he was in Minnesota, he

---

[1]As noted, the Policy provides that a dwelling is not included within the
"residence premises" unless the dwelling "is shown as the 'residence premises' in the
Declarations."  Policy at 8, ECF No. 28-1.  But *nothing* is identified as "residence
premises" in the declarations.  (Instead, the declarations identify Pour's house as the
"Insured Location."  Policy at 2, ECF No. 28-1.)  Read literally, then, the Policy does not
seem to cover *any* dwelling.  The Pours pointed out this anomaly, ECF No. 27 at 6, but
they did not argue that they are entitled to indemnification because of it.  Liberty
Mutual just ignored it.

visited the house, sometimes (but not always) staying overnight at the house.  Pour

Exam. 24:13–19, 25:2–15, ECF No. 33-1.

On September 5, 2021, a fire damaged the Champlin house, destroyed the

attached garage, and damaged the personal property of Pour, Kmontee, and Roland.

Pour Exam. 54:5–20, ECF No. 33-1.  At the time of the fire, several people lived in the

house, including Kmontee and his minor children, Roland, and Pour's ex-wife.  Pour

Exam. 5:10–15, ECF No. 28-4; Pour Exam. 13:1–12, 17:10–25, ECF No. 33-1.  Pour

reported the loss to Liberty Mutual, which, after investigation, denied coverage for

everything but Pour's personal property.  ECF No. 28-7.  Liberty Mutual denied

coverage for damage to the Champlin house because Pour did not "reside" at the house

and therefore the house was not covered as the "residence premises."  ECF No. 28-7.

Liberty Mutual also denied coverage for the personal property of Kmontee and Roland

because they were not part of the same "household" as Pour and therefore were not

"insureds" under the policy.  ECF No. 28-7.

In this lawsuit, Pour and his sons challenge Liberty Mutual's determinations.

## II. ANALYSIS

### A.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a summary-judgment motion, the

Court construes the evidence in the light most favorable to the non-moving party and

draws all reasonable inferences in that party's favor.  *Wobig v. Safeco Ins. Co. of Ill.*, 40

F.4th 843, 847 (8th Cir. 2022) (citing *Johnson v. Safeco Ins. Co. of Ill.*, 983 F.3d 323, 329 (8th

Cir. 2020)).  However, "[t]he mere existence of a scintilla of evidence in support of the

[non-movant's] position will be insufficient; there must be evidence on which the jury

could reasonably find for the [non-movant]."  *Rohr v. Reliance Bank*, 826 F.3d 1046, 1052

(8th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

This Court has diversity jurisdiction over this case, and thus Minnesota law

controls determinations about the validity and meaning of the Policy.  *C.S. McCrossan

Inc. v. Fed. Ins. Co.*, 932 F.3d 1142, 1145 (8th Cir. 2019) (citing *Jerry's Enters., Inc. v. U.S.

Specialty Ins. Co.*, 845 F.3d 883, 887 (8th Cir. 2017)).  This Court is, of course, bound by

the Minnesota Supreme Court's decisions regarding Minnesota law.  *Id.* (citing *Integrity

Floorcovering, Inc. v. Broan-Nutone, LLC*, 521 F.3d 914, 917 (8th Cir. 2008)).  But "[i]f the

Minnesota Supreme Court has not spoken on a particular issue, this court must attempt

to predict how the Minnesota Supreme Court would decide an issue and may consider

relevant state precedent, analogous decisions, considered dicta and any other reliable

data."  *Id.* (cleaned up).

B. *"Residence Premises"*

Under Minnesota law, the meaning of an insurance policy is a legal question that is generally determined using the same canons that apply to the interpretation of any contract. *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). An insurance policy "must be construed as a whole, and unambiguous language must be given its plain and ordinary meaning." *Id.* (quoting *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 652 (Minn. 1986)). Language in an insurance policy is ambiguous only if it is susceptible to more than one reasonable interpretation. *Wesser v. State Farm Fire & Cas. Co.*, 989 N.W.2d 294, 299 (Minn. 2023) (quoting *King's Cove Marina, LLC v. Lambert Com. Constr. LLC*, 958 N.W.2d 310, 316 (Minn. 2021)). Ambiguous terms are construed in favor of the insured. *Id.* But "[w]here the language is unambiguous, we will not render a construction which is more favorable to finding coverage but will apply the phrase to the facts of the case in order to give effect to the plain meaning of the language." *Firemen's Ins. Co. of Newark, N.J. v. Viktora*, 318 N.W.2d 704, 706 (Minn. 1982) (citing *Ostendorf v. Arrow Ins. Co.*, 182 N.W.2d 190, 192 (Minn. 1970)).

1.  Residency Requirement

Liberty Mutual argues that the definition of "residence premises" is unambiguous and should be given its plain and ordinary meaning.  According to Liberty Mutual, the Champlin house was covered by the Policy only if Pour "resided" at that house.  Liberty Mutual concedes that a person can reside in more than one place, and also concedes that its policy covers a residence of the insured, even if the insured has more than one residence.  Liberty Mutual argues, however, that the Champlin home was not a residence of Pour—mainly because, after Pour moved to Georgia to live with his new wife, he barely set foot in the Champlin home.

Pour, by contrast, argues that the Policy did *not* require Pour to "reside" at the Champlin house at the time of the fire.  Pour relies on *Farmers Ins. Co. of Or. v. Trutanich*, a case in which similar—but not identical—language in a homeowner's policy was found to be ambiguous, because it was unclear whether the phrase "where you reside" modified only part of the definition of "residence premises" or the entire definition.  858 P.2d 1332, 1337 (Or. App. 1993).  But no such ambiguity is presented in this case.  In the Policy, the language and formatting of the clause defining "residence premises" make clear that the phrase "where you reside" modifies *both* "[t]he one family dwelling, other structures, and grounds" *and* "[t]hat part of any other building."  Policy at 8, ECF No. 28-1; *see State v. Khalil*, 956 N.W.2d 627, 635 (Minn. 2021) (a last antecedent separated

from a qualifier by a comma is evidence that the qualifier is supposed to apply to all the antecedents).

The Pours next argue that the "where you reside" provision did not impose a continuing condition of coverage, but instead was merely intended to identify the dwelling that was being insured by referring to the dwelling in which the named insured resided on the day the Policy was issued.  In other words, as the Pours would have it, the provision was merely providing: "This policy covers the dwelling in which the named insured resided on the day the policy was issued, and that coverage continues even if the named insured moves away and no longer resides in the dwelling."

In support of their argument, the Pours rely on *Ins. Co. of N. Am. v. Howard*, 679 F.2d 147 (9th Cir. 1982)*.*  In *Howard*, the Ninth Circuit interpreted a clause in a homeowner's policy that provided: "Coverage A insures . . . the described residence owned and occupied by the insured exclusively for residential purposes."  *Id.* at 148. The Ninth Circuit found the provision to be unambiguous, holding that "[t]he provision describes the residence covered at the time of the issuance of the policy. . . . It does not impose a condition requiring the policyholder to continue to live in the residence."  *Id.*

There are at least three problems with the Pours' reliance on *Howard*.  First, the relevant language in the Policy ("where you reside") is materially different from the

relevant language in *Howard* ("owned and occupied").  Second, the result in *Howard*

makes no sense:  Why would an insurer want to make certain that the insured was

living in the insured dwelling on the day the policy was issued, but not the next day, or

the day after that, or during any of the other 364 days covered by the policy?  And

if—as the Pours suggest—the provision is merely attempting to identify the house that

is being insured, why not just use the *address* of the house?  Third, the decision of the

*Howard* court was not based on legal authority, but on what the court described as "any

proper view of the law."  *Id.* at 149.  But the court was required to apply not its

subjective opinion of what "view of the law" is "proper," but the law of the State of

Oregon—and the court did not cite a single decision of an Oregon court (or, for that

matter, anything else but its own say-so) in determining what "view of the law" was

"proper."

In any event, even if the Court accepted the Pours' interpretation, the critical

question would change only slightly—from whether Pour resided at the Champlin

house on the date of the fire (September 5, 2021) to whether Pour resided at the

Champlin house on the first day of the Policy period (May 15, 2021).  Because nothing of

significance changed between the two dates, it really does not matter which date the

Court treats as determinative.

2.  Reside

"Residency is 'essentially a fact question,' but when the facts are not in dispute

(as is true here) a court may determine residency as a matter of law."  *Progressive Direct*

*Ins. Co. v. Rithmiller*, 505 F. Supp. 3d 899, 904 n.5 (D. Minn. 2020) (citing *Fruchtman v.*

*State Farm Mut. Auto. Ins. Co.*, 142 N.W.2d 299, 300 (Minn. 1966)).  Although "reside" is

not defined in the Policy, Minnesota courts have "repeatedly held that the term

'resident' in an insurance contract is not ambiguous."  *Id.* (first citing *Lott v. State Farm*

*Fire & Cas. Co.*, 541 N.W.2d 304, 306–07 (Minn. 1995); then citing *Tollefson v. Am. Fam.*

*Ins. Co.*, 226 N.W.2d 280, 283 (1974)).  Further, the Pours are correct that Minnesota law

allows multiple residences for insurance purposes.  *Am. Fam. Mut. Ins. Co. v. Thiem*, 503

N.W.2d 789, 790 (Minn. 1993) ("Although it is possible to have only one domicile, it is

possible for insurance purposes to be a resident of more than one household.").

Minnesota cases do not squarely address the question of when a named insured

"resides" in a particular dwelling, but cases addressing whether a named insured's

*relatives* are "residents of the household" are instructive.  Minnesota courts formally use

a "three-factor" test for determining whether a person is a resident of a named insured's

household: "(1) living under the same roof; (2) in a close, intimate and informal

relationship; (3) where the intended duration is likely to be substantial, where it is

consistent with the informality of the relationship, and from which it is reasonable to

-10-

conclude that the parties would consider the relationship in contracting about such matters as insurance or in their conduct in reliance thereon." *Viktora*, 318 N.W.2d at 706 (cleaned up).  Generally, the first two factors are grouped together "by defining 'household' in its common and ordinary meaning for insurance purposes as generally synonymous with 'family' and as including those who dwell together as a family under the same roof."  *Id.* at 707 (citations and internal quotations omitted).

In applying this test, courts have considered a number of factors, including (1) the frequency and duration of stays in the home; (2) the nature of the relationship between the name insured, the other occupants, and the purported resident; (3) the subjective beliefs of the purported resident and other occupants; and (4) whether the purported resident (a) has a bedroom in the house, (b) keeps clothes or personal possessions in the house, (c) has a key to the house and authority to use that key to enter the house, (d) uses the house as a mailing address, (e) pays rent, eats, sleeps, and does chores at the house, or (f) has another house or residence.  *See, e.g., id.* (adult son was insured resident of parents' house after moving in rent-free for approximately four months while temporarily unemployed and bringing clothes/personal items, eating all his meals, sleeping, doing chores, and receiving mail at the house); *Fruchtman*, 142 N.W.2d at 301–02 (27-year-old army doctor was not "residing in the same household" as his mother for auto insurance purposes because he was self-supporting, temporarily

visiting on his way to a new post, and he "had not been physically present in the home for more than a week or two on any one occasion for a period of approximately 2 1/2 years prior to the accident," despite using the house as his mailing address); *Skarsten v. Dairyland Ins. Co.*, 381 N.W.2d 16, 19 (Minn. App. 1986) (college student with apartment on campus also shared parents' household because she retained her own room in the house, kept belongings there, was supported by her father, spent weekends and holidays at the house, and considered it her permanent home); *Mut. Serv. Cas. Ins. Co. v. Olson*, 402 N.W.2d 621, 624–25 (Minn. App. 1987) (minor son was insured resident of mother's household when he spent most weekends and the three previous summers there, had a bedroom, kept clothes and other personal possessions in the house, had his own key, did chores, and the "intended duration," though definite on each visit, was sufficient "in the broader sense of the relationship of the persons to each other and to the household").

Most of these factors undermine Pour's contention that he resided in the Champlin home. Pour did have a "close, intimate and informal relationship" with the occupants of the Champlin house, which included his children, grandchildren, and ex-wife. Pour Exam. 31:13–25, ECF No. 33-1. True to this informal relationship, Pour did not charge rent to Kmontee, Roland, or any other occupant. Pour Depo. 30:17–18, ECF No. 28-2; Exam. Pour 50:10–12, ECF No. 33-1. When Pour visited Minnesota, he would

usually go to the house and socialize with his family, sometimes even staying the night. Pour Exam. 31:13–25, ECF No. 33-1. Pour also says that he regarded the Champlin house as one of his residences. Pour Depo. 39:20–22, 41:5–17, ECF No. 28-2.

That said, Pour visited Minnesota only five[2] times in the approximately two-and-a-half years leading up to the fire. ECF No. 33-5; Pour Depo. 19:1–25, ECF No. 33-6. None of his visits were longer than two weeks, and he spent a total of just 28 days in Minnesota during that period of time. ECF No. 33-5; Pour Exam. 25:10–15, ECF No. 33-1. When Pour did visit, he sometimes did not stay at the Champlin house, but instead stayed at a cousin's house. Pour Exam. 25:2–9, 31:9–25, ECF No. 33-1. And because Pour did not have his own bedroom in the Champlin house, when he did spend the night, he had to sleep in a room across from the master bedroom. Pour Exam. 25:10–15, ECF No. 33-1. Pour's own bed and other personal possessions (save for his car, which he took to Georgia) were put in storage when he moved to Georgia. Pour Exam. 55:5–21, ECF No. 33-1; Pour Depo. 22:21–25, 23:1–23, ECF No. 39-2. In 2019, Pour switched his mailing address, driver's license, voter registration, and financial accounts—including the Champlin house mortgage—to his new Georgia home,

---

[2]Two of the round-trip plane tickets in the record have overlapping dates, so it is not clear if they represent two separate trips. Viewing the evidence in the light most favorable to Pour, the Court will assume that they do, in fact, represent two trips.

consistent with his belief that his Georgia home had become his primary residence.

Pour Exam. 7:9–25, 49:8–24, 50:6–9, ECF No. 33-1; Pour Depo. 34:16–23, ECF No. 39-2.

Ultimately, although "a scintilla of evidence" supports the contention that Pour

resided at the Champlin house, the evidence as a whole establishes that Pour had not

resided in the house since he married his second wife and moved to Georgia.  Thus, no

reasonable jury could find that Pour resided at the Champlin house either at the time of

the fire or at the start of the Policy period.

### 3.  Minnesota Fire Insurance Policy

Finally, the Pours argue that the Policy's residency requirement violates the

Minnesota Standard Fire Insurance Policy (Standard Policy).  Minn. Stat. § 65A.01

(2021).  The Standard Policy "requires that certain terms and conditions be included in

fire insurance policies in Minnesota," and provides that those terms and conditions

"generally may not be omitted, changed, or waived."  *Else v. Auto-Owners Ins. Co.*, 980

N.W.2d 319, 324 (Minn. 2022) (cleaned up).  The Minnesota Supreme Court has held

that "when an insurance policy provision is in *direct conflict* with a statute regulating the

insurance industry, the statute's conformity clause operates to substitute the statutory

provisions for the policy provision."  *Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d

683, 690 (Minn. 1997) (citing *Atwater Creamery Co. v. Western Nat. Mut. Ins. Co.*, 366

N.W.2d 271, 275 (Minn. 1985)) (emphasis added).

In support of their contention that the residency requirement in the Policy

directly conflicts with the statute, the Pours seize on the following Standard Policy

language: "Unless otherwise provided in writing added hereto this company shall not

be liable for loss occurring: . . . (b) while the described premises, whether intended for

occupancy by owner or tenant, are vacant and unoccupied beyond a period of 60

consecutive days . . . ."  Minn. Stat. § 65A.01, subd. 3.  According to the Pours, *if* the

Policy requires the named insured to continuously occupy a dwelling in order for the

dwelling to be covered, then it conflicts with this language from the Standard Policy.

The Pours may be correct, but the problem with their argument is that the Policy

does *not* require the named insured to continuously occupy the premises.  That is not

what Liberty Mutual argues, and that it is not what this Court has held.[3]  Because the

Policy does not require continuous occupancy, the Policy does not conflict with the

occupancy language in the Standard Policy, and the cases on which the Pours rely are

inapposite.  *FBS Mortg. Corp. v. State Farm Fire & Cas. Co. of Bloomington, Ill.*, 833 F. Supp.

688, 695 (N.D. Ill. 1993) ("State Farm's proposed interpretation of the Homeowner's

Policy denies coverage in the absence of continuous, physical inhabitation of the

Insured Premises by the Named Insured at the time of loss. Hence, State Farm broadens

---

[3]It bears emphasizing that "reside" and "occupy" do not mean the same thing.
One can reside at a house that one does not presently occupy, and one can occupy a
house in which one does not presently reside.

the Standard Policy's exclusions by requiring physical occupation of the Insured

Premises for a period of less than 60 days before the loss."); *Dixon v. First Premium Ins.*

*Grp.*, 934 So. 2d 134, 141 (La. App. 2006) (holding that renting out a house, in which

named insured recently lived, for less than 60 days did not violate "residency

requirement" of the homeowner's policy based on Standard Fire Policy); *Shank v. Safeco*

*Ins. Co.*, No. 2:15-cv-09033, 2016 WL 4534028, at *6 (S.D. W. Va. Aug. 30, 2016) (finding

insurer's interpretation of "residence premises" would violate the Standard Fire Policy's

60-day vacancy minimum because it "would foreclose coverage on any dwelling unless

the insured frequently sleeps there"), *withdrawn and vacated*, 2017 WL 4118966 (S.D. W.

Va. Aug. 22, 2017).

More generally, although it does not appear that any Minnesota court has

addressed the interaction between a residency requirement and the Standard Policy, the

Minnesota insurance code clearly contemplates that insurers will offer homeowner's

policies under which coverage will depend on the uses to which the insured home is

put.  *See* Minn. Stat. § 65A.27, subd. 4 ("'Homeowner's insurance' means insurance

coverage . . . normally written by the insurer as a standard homeowner's package policy

or as a standard residential renter's package policy. This definition includes, but is not

limited to, policies that are generally described as homeowner's policies,

mobile/manufactured homeowner's policies, dwelling owner policies, condominium

owner policies, and tenant policies."). Indeed, the Standard Policy itself includes language acknowledging as much: "When this policy has been *issued to cover buildings used for residential purposes* other than a hotel or motel and has been in effect for at least 60 days, or if it has been renewed, this policy shall not be canceled, except . . . ." Minn. Stat. § 65A.01, subd. 3a(1) (emphasis added). In short, the Policy requirement that, to be covered, Pour must reside at the Chaplain home (which is different from requiring that he occupy the home continuously) does not conflict with the Standard Policy.

### C. *Residents of Pour's Household*

Finally, in order to have their personal property covered by the Policy, Kmontee and Roland must be "insureds" as defined by the Policy, and in order to be "insureds" as defined by the Policy, Kmontee and Roland must be "residents of [Pour's] household." Policy at 8, ECF No. 28-1. As the Court has held, Pour did not reside at the Champlin house, but it is undisputed that Kmontee and Roland *did*. Because Pour and his sons did not "dwell together as a family under the same roof," they were not residents of the same "household." *See Viktora*, 318 N.W.2d at 707. Thus, Kmontee and Roland are not "insureds" under the Policy, and are not entitled to coverage for their personal property.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.    Plaintiffs' motion for partial summary judgment [ECF No. 25] is DENIED.

2.    Defendant's motion for summary judgment [ECF No. 30] is GRANTED.

3.    The amended complaint [ECF No. 5] is DISMISSED WITH PREJUDICE

     AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 22, 2024

Patrick J. Schiltz, Chief Judge
United States District Court